

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI EX REL. )
MELVIN ANDERSON, )
           )
            Relator, )
           )
    v. )
           )
HONORABLE MARK PREYER, )
           )
           Respondent, )    Nos. SD38672 and SD38866
           )               CONSOLIDATED
and )
           )    **Filed:  August 25, 2025**
STATE OF MISSOURI EX REL. )
ATTORNEY GENERAL ANDREW )
BAILEY, )
           )
            Relator, )
           )
    v. )
           )
HONORABLE MARK PREYER, )
           )
           Respondent. )

### ORIGINAL PROCEEDINGS IN PROHIBITION

### PRELIMINARY WRITS OF PROHIBITION MADE PERMANENT

We are presented with a highly unusual circumstance in which the judge presiding over criminal proceedings accepted conflicting jury verdicts, discharged the jury, then passed away before the conflicting nature of the verdicts was brought to the court's attention.  Relator, the

successor judge, allowed some verdicts to stand, set aside some verdicts, and ordered a new trial. Anderson and the Missouri Attorney General filed competing writ petitions with this court, seeking to prohibit further proceedings by the trial court, albeit for different reasons. We granted preliminary writs of prohibition and now make them permanent.

**Background**

The State's third amended information alleged Anderson had committed eight offenses: first-degree murder, kidnapping, second-degree felony murder predicated on death that occurred during the kidnapping, second-degree domestic assault, two counts of armed criminal action, unlawful use of a weapon, and evidence tampering. After hearing the evidence, receiving instructions from the court, and retiring to deliberate, the jury returned ten verdict forms. They found Anderson guilty of domestic assault and unlawful use of a weapon, and acquitted Anderson of kidnapping, evidence tampering, felony murder predicated on death during a kidnapping, and the associated armed criminal action charge. As to Count I, the first-degree murder charge (which also was submitted on the lesser included offense of second-degree murder) and Count II, the associated armed criminal action charge, the jury's verdict forms reflected findings that were not only inconsistent, but directly contradictory and mutually exclusive:

- "As to Count I, we, the jury, find the defendant Melvin D Anderson guilty of Murder in the Second Degree . . . ."

- "As to Count I, we, the jury, find the defendant Melvin D Anderson not guilty."

- "As to Count II, we, the jury, find the defendant Melvin D Anderson guilty . . . ."

- "As to Count II, we, the jury, find the defendant Melvin D Anderson not guilty."[1]

---

[1] The jury's conflicting verdicts *could* be harmonized to reflect an intent to find Anderson not guilty of first-degree murder, guilty of the lesser included offense of second-degree murder, and guilty of armed criminal action associated with second-degree murder but not first-degree murder. It is not our prerogative "to determine the intent of the jury as to its verdicts based upon

2

The court polled the jurors, who all answered that those were their verdicts.[2]

The court "accept[ed] these verdicts for the record as the verdicts of the jury," thanked the jurors for their service, and discharged the jury.[3] The court's docket entry reads, "JURY RETURNS . . . VERDICT OF GUILTY ON CT I (2ND DEGREE) CT II [armed criminal action associated with count one] COUNT III [second-degree domestic assault] AND COUNT VII [unlawful use of a weapon]." A sentencing hearing was docketed for a later date.

In the days that followed, neither Anderson nor the State raised the issue of the contradictory verdicts. Anderson's timely motion for new trial did not challenge the verdicts as being inconsistent or contradictory. That motion remained pending when the trial judge passed away. The Supreme Court of Missouri appointed Respondent to preside over Anderson's pending criminal case.

The inconsistency of the verdicts was raised for the first time in Anderson's "amended" motion for new trial, filed nearly nine months after the verdicts had been accepted and entered. Nearly a full year after the entry of the verdicts, the court granted Anderson's "amended" motion for new trial because defects, inconsistencies, and ambiguities in the verdicts resulted in no final verdict in proper form for the trial court to accept. The case was docketed for a new jury trial on

---

inferences, conjecture[,] and speculation." *State v. Zimmerman*, 941 S.W.2d 821, 825 (Mo.App. W.D. 1997).

[2] Polling jurors whether the returned verdicts were their verdicts will not resolve conflicting, inconsistent verdicts, especially if the court is unaware of the inconsistency at that time. *Id.* at 825-26.

[3] The proper course of action would have been for the court to refuse to accept the inconsistent verdicts, call the jury's attention to their mistake in failing to follow instructions, and resubmit the matter to the jury for further deliberations based on written instructions in writing. *State v. Peters*, 855 S.W.2d 345, 348-50 (Mo. banc 1993), *as modified on denial of reh'g* (June 29, 1993). *Accord **State v. Thompson***, 711 S.W.3d 339, 349-50 (Mo. banc 2025).

all issues and all counts in the State's third amended information.

Anderson moved to dismiss the charges on which he had been acquitted by the prior jury, claiming that a retrial on all charges was barred by double jeopardy. Most notably, he sought to have the first-degree murder charge amended to second-degree murder at the highest. After a hearing on the motion, the trial court granted the motion in part and denied it in part, limiting retrial to those charges on which the prior jury had rendered inconsistent verdicts or had found Anderson guilty.

Anderson petitioned this court seeking a writ prohibiting further proceedings and dismissing the first-degree murder charge. The Missouri Attorney General petitioned this court for a writ prohibiting further proceedings other than to sentence Anderson for the offenses of which he had been found guilty.

**Propriety of Writ Relief and Trial Court's Authority to Grant a New Trial**

We first must consider whether a remedial writ is authorized and appropriate. "Writs of prohibition or mandamus are extraordinary remedies." ***State ex rel. Bailey v. Cox***, 690 S.W.3d 530, 531 (Mo.App. S.D. 2024).

> An extraordinary writ of prohibition is appropriate: (1) to prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction[,] or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted.

***Id.*** (citation modified). *Accord* ***State ex rel. Strauser v. Martinez***, 416 S.W.3d 798, 801 (Mo. banc 2014). The trial court action at the core of both writ petitions is the granting of a new trial. A writ of prohibition is appropriate to prevent a court from acting outside of its constitutional authority in retrying the defendant. ***State ex rel. Kemper v. Vincent***, 191 S.W.3d 45, 49 (Mo. banc 2006). Thus, the availability and propriety of writ relief requires us to examine the trial court's authority

4

to grant a new trial.

A trial court may, of its own initiative, order a new trial. Rule 29.13(b).[4] Such an order may only be entered with the consent of the defendant and "before the entry of judgment and imposition of sentence but not later than thirty days after the verdict of the jury is returned." Rule 29.13(b). This rule cannot serve as a basis for the grant of a new trial in this case because the court's new-trial orders occurred long after thirty days post-verdict.

Anderson's original and "amended" motions for new trial cited to and were filed pursuant to Rule 29.11. A trial court has discretion to grant a new trial under this rule for good cause shown. Rule 29.11(a). A motion for new trial under this rule "shall be filed within fifteen days after the return of the verdict[,]" with the court having discretion to extend this time "for one additional period not to exceed ten days." Rule 29.11(b). This time limitation is mandatory and without exception. *State v. Vandergrift*, 669 S.W.3d 282, 293 (Mo. banc 2023).

Applying Rule 29.11 to the facts of this case, we agree with the Attorney General's assertion that Respondent lacked authority to order a new trial pursuant to this rule. Anderson filed his original motion within the time allowed by the rule, but his "amended" motion was filed well after the time for filing such a motion had lapsed, and as such it was a nullity. *Id.* The original motion for new trial contained no allegation of inconsistent verdicts, so that argument could not constitute good cause to grant a new trial. Even if inconsistent verdicts had been alleged in the original motion, that motion was denied for all purposes when it was not "passed on" within 90 days after it was filed. *State ex rel. Baker v. Kendrick*, 136 S.W.3d 491, 492-93 (Mo. banc 2004);

---

[4] Rule references are to Missouri Supreme Court Rules (2023).

5

Rule 29.11(g).[5]  For these reasons, an extraordinary writ of prohibition would be necessary and appropriate to prohibit Respondent from proceeding to a new trial and to vacate the new-trial order granted under Rule 29.11.  Because the new-trial order must be vacated, the order and judgment determining which counts would be retried also must be vacated.

If Rules 29.11 and 29.13 were the only rules that gave a trial court authority and discretion to grant a new trial prior to sentencing and entry of judgment, then our review would conclude here.  However, Rule 32.15 provides:

> If by reason of his going out of office, death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these Rules after a verdict is returned or findings of fact are filed, then any other judge sitting in or assigned to the court in which the criminal proceeding was tried may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial.

On its face, this rule appears to be applicable to the circumstances in this case and is not constrained by the time limitations in Rules 29.11 and 29.13.  If the trial court's new-trial orders could be construed to fall under this rule, then extraordinary writ relief would not be appropriate.

Respondent's new-trial orders are well-supported by findings and are well-reasoned under Rule 29.11, but not under Rule 32.15.  Nowhere in either order or elsewhere in the record provided to us on review did Respondent cite Rule 32.15, engage in such an analysis, or conclude that a new trial is necessary because he is unable to perform the duties to be performed by the court.  Yet, it

---

[5] Computation of the 90 days does not include days when "the court lacks power to act." Rule 29.11(g).  An individual judge represents the judiciary and exercises power and authority on behalf of the court but is not "the court."  "[C]ourts must continue despite death, resignation, illness, or expiration of the term of a prior judge . . . ." **State v. Tettamble**, 450 S.W.2d 191, 193 (Mo. 1970).  This is evident in cases where one judge presides over the trial and a different judge pronounces sentence and enters judgment.  *See id.* and cases cited therein.  This principle also underlies a defendant's challenge to disqualify a judge for cause, which is not a challenge to the court's jurisdiction or authority but to the impartiality of the particular judge assigned to the case. The passing of the trial judge in this case did not deprive the *court* of its power or authority to act.

6

is apparent that Respondent was troubled about performing these duties, especially on those counts for which the jury returned conflicting verdicts.

The analysis under Rule 32.15 is subjective, and the outcome of the analysis is completely within the successor judge's discretion. The plain language of the rule places the decision firmly within the discretion of the successor trial judge, who may grant a new trial if *that judge* is satisfied that he or she cannot perform the duties to be performed by the court for "any . . . reason." Rule 32.15 does not require a successor judge to consider whether a reasonable judge could proceed with the case, but rather whether that particular successor judge is satisfied he or she can preside over the proceedings and make necessary rulings and judgments.

Application of Rule 32.15 is slightly more complicated when one case or action includes more than one offense charged in the same information and tried simultaneously, as in this case. Must the same decision apply to all counts and verdicts, or may they be considered on an individual basis? The plain language of the rule and established law provide guidance. The rule speaks in terms of an action that has been tried and a verdict returned or findings of fact filed. When each count of a multiple count information must be considered separately and a separate verdict entered for each count,[6] as here, the successor judge must make a Rule 32.15 determination as to *each* charge. Although multiple counts may have been tried simultaneously, it is possible that some verdicts may stand while other, separate charges may need to be retried.

Despite the subjective, discretionary nature of Rule 32.15, successor judges have strong incentives *not* to grant a new trial. Granting a new trial under this rule is akin to granting a mistrial, which trial courts are well aware is a drastic remedy to be exercised only in extraordinary

---

[6] *See State v. Campbell*, 675 S.W.3d 223, 229-30 (Mo.App. E.D. 2023); MAI-CR 4th 404.12 (2022).

circumstances. *See Kemper*, 191 S.W.3d at 49. A new trial taxes the court's and the parties' limited time and resources. Victims and witnesses bear a burden, too. Successor judges also would be aware that even if claims of trial error exist, the vast majority of these can be raised and addressed in a subsequent appeal, if necessary. In most cases, the successor judge will be able to dispose of the case after reviewing the trial transcript and hearing the parties' arguments. 28 Mo. Prac., Mo. Criminal Practice Handbook § 18:8 (2025). Only in rare cases where the legal issues or problems with the record are far beyond that pale will a successor judge determine that he or she has no less drastic option available than to grant a new trial.

For the aforesaid reasons, an extraordinary writ of prohibition is necessary so that Respondent has the opportunity to engage in a Rule 32.15 analysis and enter findings and conclusions as appropriate.[7]

## Double Jeopardy

Thus far we have focused on court procedure and the trial court's authority to act. Anderson's principle concern is substantive rather than procedural: if a new trial is granted, will it not subject him to double jeopardy? The Attorney General's briefing to this court likewise shows concern about the proper resolution of this issue.

Our authority to decide such issues is very circumscribed. "In a writ proceeding, this Court's duty is only to confine the trial court to its authority and direct it to exercise that authority, not to give an advisory opinion as to what orders it should issue." *State ex rel. Country Mut. Ins. Co. v. May*, 620 S.W.3d 96, 100 (Mo. banc 2021) (citation modified). We cannot dictate what the outcome of Respondent's Rule 32.15 analysis should be. Our discussion on this issue will be

---

[7] This writ opinion should not be construed as a pronouncement that findings and conclusions under Rule 32.15 must be made in every case in which a successor judge is appointed. This outcome is the result of the extraordinary facts of this case.

8

limited to an explanation of why a retrial on at least some of the offenses alleged in the third amended information, if ordered pursuant to Rule 32.15, would not violate Anderson's right to be free from double jeopardy.

"The right to be free from double jeopardy is a constitutional right that goes to the very power of the State to bring the defendant in the court to answer the charge brought against him." *State v. Neher*, 213 S.W.3d 44, 48 (Mo. banc 2007). Article 1, section 19 of the Missouri Constitution and the Fifth Amendment of the U.S. Constitution both bar double jeopardy. The Missouri Constitution's prohibition prevents retrial only after an acquittal or conviction, while the U.S. Constitution's prohibition applies once jeopardy has attached. *State v. Basnight*, 613 S.W.3d 895, 898-99 (Mo.App. W.D. 2020). "Jeopardy means exposure to danger and . . . [g]enerally . . . attaches when a jury is empaneled and sworn." *Id.* (citations omitted). In this case, the U.S. Constitution's double jeopardy protection has been implicated as to each of the counts in the second and third amended petitions.[8] Once double jeopardy has been implicated, the protections provided under both constitutions are coextensive. *State v. Heathcock*, 708 S.W.3d 163, 166 n.4 (Mo. banc 2025). These protections include, among other things, the right to be free from successive prosecutions for the same offense. *U.S. v. Dixon*, 509 U.S. 688, 696-97 (1993); *State v. Onyejiaka*, 671 S.W.3d 796, 798 (Mo. banc 2023).

Whether a new trial granted under Rule 32.15 violates double jeopardy appears to be an issue of first impression. The rule, which became effective in 1982, has been cited in only two

---

[8] The jury was empaneled and sworn with the second amended petition being operative. The State sought and was granted permission to file its third amended petition after the close of all evidence but before the jury was instructed.

9

Missouri opinions,[9] neither of which aids our analysis.

Just as not all mistrials preclude a subsequent retrial, *Kemper*, 191 S.W.3d at 51, double jeopardy does not necessarily preclude a new trial under Rule 32.15. We consider three categories of verdicts at issue in this case.

The first category of verdict is an unequivocal acquittal. A defendant cannot be subjected to retrial for the same offense for which a jury rendered a not guilty verdict and the court accepted that verdict and discharged the jury. *Basnight*, 613 S.W.3d at 899; *State v. Flemons*, 144 S.W.3d 877, 883 (Mo.App. W.D. 2004). "The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal." *Arizona v. Washington*, 434 U.S. 497, 503 (1978). If the successor judge determines that he cannot proceed as to the charges for which the jury unequivocally returned not guilty verdicts, then the judge may order a new trial pursuant to Rule 32.15, but double jeopardy would preclude retrial for those offenses.

A second category of verdict is an unequivocal finding of guilt returned by the jury and accepted by the court. The constitutional rights protected by the prohibition against double jeopardy include the right to have one's trial completed by a particular tribunal. *Washington*, 434 U.S. at 503. A second prosecution may be undesirable due to gross unfairness, increased financial or emotional burden, prolonging of the time the charges remain unresolved, and other reasons. *Id.* at 503-05. While most of the analysis of this double jeopardy concern is found in cases involving mistrial, the same principles apply to fully tried causes culminating in a guilty verdict. Just like the unequivocal acquittal, the unequivocal guilty verdict also would bar retrial

---

[9] *State v. Seuferling*, 238 S.W.3d 217, 221 (Mo.App. W.D. 2007); *State v. Chapman*, 704 S.W.2d 674, 676 (Mo.App. S.D. 1986).

10

as a general rule, as the retrial would not occur before the same jurors who heard the first trial.[10]

> As the Court stated in ***Illinois v. Somerville***, 410 U.S., at 471, 93 S.Ct., at 1073:
>
>> The determination by the trial court to abort a criminal proceeding where jeopardy has attached is not one to be lightly undertaken, since the interest of the defendant in having his fate determined by the jury first impaneled is itself a weighty one. . . . Nor will the lack of demonstrable additional prejudice preclude the defendant's invocation of the double jeopardy bar in the absence of some important countervailing interest of proper judicial administration.

***Washington***, 434 U.S. at 504 n.15 (citation modified).  This general legal principle is subject to a caveat so large that it nearly displaces the general rule:  retrial is not barred if requested by or consented to by the defendant.  ***State v. Fassero***, 256 S.W.3d 109, 115 (Mo. banc 2008); ***State v. Tolliver***, 839 S.W.2d 296, 299 (Mo. banc 1992).[11]  If a new trial is granted pursuant to Rule 32.15 on a charge for which a jury returned a guilty verdict, double jeopardy would preclude retrial on that charge unless the defendant consents or some other double jeopardy exception applies.

The third and most troubling category is the inconsistent verdict.  In ***Zimmerman***, the court held that when inconsistent verdicts are returned and the jury is discharged, no final verdict can be entered and retrial would not subject the defendant to double jeopardy.  ***Zimmerman,*** 941 S.W.2d at 824-26.  In ***State v. Dorsey***, 706 S.W.2d 478, 480 (Mo.App. E.D. 1986), the jury returned both guilty and not guilty verdicts, but the trial court read and accepted only the guilty verdict form.

---

[10] "Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial." ***Washington***, 434 U.S. at 505.  "Double jeopardy protection attaches when the jury is impaneled and sworn.  Once double jeopardy protection attaches, the defendant has a right to have his trial completed by the jury that has been selected." ***State v. Fassero***, 256 S.W.3d 109, 114 (Mo. banc 2008) (citation modified).

[11] In ***Tolliver***, the defendant consented to the judge declaring a mistrial in the original trial. 839 S.W.2d at 299.  The same logic applies to the defendant consenting to a retrial following an unequivocal guilty verdict.

11

The not guilty verdict form was not discovered until the legal file was being compiled on appeal. The appellate court reversed and remanded for a new trial due to verdict ambiguity, finding double jeopardy would not be implicated because the trial court received the verdicts but did not accept the not guilty verdict form. *Id.* at 481. In *Basnight*, the jury returned two verdict forms for the same count: one finding the defendant not guilty, and the other finding the defendant guilty of a submitted lesser included offense. 613 S.W.3d at 896-97. The trial court read both verdicts aloud, accepted them, and docketed a hearing for sentencing on the lesser offense. In a later appeal, the State argued that the trial court plainly erred in accepting the inconsistent verdicts. That appeal was dismissed because the verdicts had been accepted and double jeopardy precluded retrial of the case. *Id.* at 898-99.

In this case, the court read aloud and accepted all of the verdicts, yet no one–not the trial court, not the State, and not the defense–recognized the conflicting nature of the verdicts on the murder and armed criminal action counts before the jury was discharged. The court's docket entry clearly indicates Anderson was found guilty of both counts. For double jeopardy purposes, the distinguishing factor here was the court's finding of guilt, which causes the inconsistent verdicts in this case to fall under the same double jeopardy category as the unequivocal guilty verdicts. Had the trial court found Anderson *not* guilty on the contradictory verdicts, then the case would come within the same double jeopardy standard as the unequivocal not guilty verdicts and retrial would be prohibited. As in *Basnight*, double jeopardy precludes the State from retrying the *first-degree* murder charge because the jury's guilty verdict and the court's docket entry reflect a finding of guilt on the lesser included offense of second-degree murder.[12] Retrial of that count as *second-*

---

[12] The State has indicated that if this charge is retried, it would not pursue a *first-degree* murder conviction.

*degree* murder would be subject to the same double jeopardy standard as those offenses for which the jury unequivocally found Anderson guilty.

Anderson contends that the jury's not guilty verdict forms constitute acquittals on the murder and associated armed criminal action charges and bar any retrial, citing ***McElrath v. Georgia***, 601 U.S. 87 (2024). ***McElrath*** does not control this case because, in addition to that case not involving the death of the trial judge, the jury in that case indisputably acquitted the defendant of the murder charge and the trial judge entered a judgment of acquittal on that count. Anderson acknowledges the inconsistency in ***McElrath*** resulted from the jury's verdicts on different counts that arose from the same facts, not directly contradictory and mutually exclusive verdicts on the same counts as we have in this case. The holding in ***McElrath*** extended no further than to recognize that the U.S. Constitution does not permit appellate review of an acquittal. ***Id.*** at 98 (Alito, J., concurring).

The Attorney General contends that the successor trial judge must sentence Anderson for those offenses of which the court's docket entry indicates Anderson was found guilty, because he did not raise the inconsistency of the verdicts at the earliest opportunity and thereby waived that challenge. If a trial court errs (or is about to err) in accepting inconsistent verdicts, the defendant must call the error to the court's attention to preserve the issue for *appeal*, but the failure to do so does not result in waiver unless the defendant's error was self-invited. ***State v. Nickels***, 598 S.W.3d 626, 633-35 (Mo.App. E.D. 2020). Nothing in the record indicates Anderson's failure to raise this issue sooner was self-invited error or that his actions amounted to an affirmative waiver of the inconsistent verdict argument. The directly contradictory and mutually exclusive nature of the jury's verdicts on two counts need not be ignored by Respondent when he decides whether he can perform the duties to be performed by the court.

13

**Conclusion**

The preliminary writs in prohibition are made permanent. Respondent is prohibited from proceeding to a new trial based on grounds cited in Anderson's motion for new trial or "amended" motion for new trial, as the latter is a nullity and authority to grant relief under Rule 29.11 as to the original motion has lapsed by the passage of time and operation of Rule 29.11(g). Accordingly, Respondent is directed to vacate the new-trial order entered on March 20, 2024, and its order and judgment entered on September 6, 2024, in case number 19SD-CR00685-02. Respondent is prohibited from conducting any further proceedings in case number 19SD-CR00685-02 until Respondent evaluates the record pursuant to Rule 32.15 and makes determinations as to whether he can perform the duties to be performed by the court regarding the verdict(s) returned by the jury on each count of the State's third amended information. Any further proceedings shall be conducted in a manner not inconsistent with this writ of prohibition.

JACK A. L. GOODMAN, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, C.J. – CONCURS

BECKY J. WEST, J. – CONCURS